**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ELECTRONIC PRIVACY INFORMATION CENTER**
**1718 Connecticut Avenue, N.W.**
**Suite 200**
**Washington, DC 20009,**

**Plaintiff,**

**v.**

**UNITED STATES COAST GUARD**
**2100 2nd Street SW Stop 7101**
**Washington, DC 20593**

**DEPARTMENT OF HOMELAND SECURITY**
**Office of General Counsel**
**Washington, DC 20258**

**Defendants.**

**Civil Action No. ____________**

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a) (2013), for injunctive and other appropriate relief, seeking the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") on May 29, 2015, from Defendant United States Coast Guard ("USCG") and Defendant Department of Homeland Security ("DHS").

2. Specifically, EPIC challenges the failure of the USCG to disclose documents in response to EPIC's Freedom of Information Act request ("FOIA Request"). In the FOIA Request, EPIC sought documents related to the Nationwide Automatic Identification System ("NAIS"), a system established by the federal government to monitor the identity, course, and location of

recreational and commercial vessels; to retain records of the private activities of U.S. boaters; and to enable analysis of these activities. The NAIS program exceeds the stated purpose of marine safety and constitutes an ongoing risk to the privacy and civil liberties of mariners across the United States. EPIC seeks an injunctive order requiring disclosure, as soon as practicable, of all responsive, non-exempt records.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(A)(vii), 552(a)(4)(B), and 552(a)(6)(c)(i). This Court has personal jurisdiction over the Defendants USCG and DHS. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

4. Plaintiff EPIC is a public-interest research organization incorporated as a 501(c)(3) non-profit corporation based in Washington, D.C. EPIC conducts government oversight and analyzes the impact of government programs on civil liberties and privacy interests. EPIC publishes books, reports, and a bi-weekly newsletter. EPIC also maintains a popular privacy website, https://www.epic.org, where EPIC publishes educational resources about emerging privacy issues, including documents obtained from federal agencies under the FOIA. EPIC routinely disseminates information to the public through its website, the EPIC Alert, and other media outlets. EPIC is a representative of the news media.

5. Defendant USCG is a component agency of Defendant DHS. The USCG and DHS are agencies within the meaning of the FOIA, 5 U.S.C. § 552(f)(1). Defendants are headquartered in Washington, D.C.

## Facts

### The Nationwide Automatic Identification System

6. The Maritime Transportation Security Act of 2002 directs the Secretary of Homeland Security to "implement a system to collect, integrate, and analyze information concerning vessels operating on or bound for waters" subject United States jurisdiction. 46 U.S.C. § 70113. The DHS has fulfilled this directive largely through the NAIS program.

7. NAIS is a network of approximately 200 receiver sites, operated by the USCG, located along the coasts and rivers of the United States that collect information about vessels in coastal and territorial waters.[1] These sites, located in 58 ports and nine coastal areas, collect information from vessels equipped with automatic identification systems ("AIS"), a standard for ship-to-ship collision avoidance that generates detailed data about vessels.[2]

8. A vessel equipped with AIS, for the purpose of collision avoidance, broadcasts a regular stream of data, including the vessel's "name, course and speed, classification, call sign, registration number," and unique nine-digit identification number.[3] Most vessels over 65 feet that operate in U.S. waters are required to carry AIS,[4] and owners of smaller vessels may also opt to use it. NAIS receives roughly 92 million AIS messages a day from 12,700 unique vessels.[5]

9. The first phase of NAIS was implemented in 2006 and 2007.[6] In the second phase, the USCG is installing permanent transceivers capable of transmitting data out to 24 nautical miles

---

[1] U.S. Coast Guard, *Nationwide Automatic Identification System* (last updated July 30, 2014), http://www.navcen.uscg.gov/?pageName=NAISmain.
[2] U.S. Coast Guard Acquisition Directorate, *Program Overview: Nationwide Automatic Identification System* (July 10, 2015) [hereinafter "NAIS Overview"], http://www.uscg.mil/acquisition/nais/default.asp.
[3] U.S. Coast Guard Navigation Ctr., *Automatic Identification System Overview* (last updated July 30, 2014), http://www.navcen.uscg.gov/?pageName=AISmain.
[4] 33 C.F.R. § 164.46(a)(1).
[5] *See* NAIS Overview.
[6] U.S. Coast Guard Acquisition, *Nationwide Automatic Identification System Stands Up Increment 1*, Delivering the Goods: News from U.S. Coast Guard Acquisition (Nov. 2007), http://www.uscg.mil/acquisition/newsroom/pdf/cg9newsletternov07.pdf.

and receiving data from out to 50 nautical miles.[7] These installations are expected to conclude by the end of 2015.[8] Ultimately, the USCG plans to expand coverage out to 2,000 miles by using "satellite communications and VHF services on offshore platforms and deep ocean buoys."[9]

10. The USCG transfers data obtained by NAIS to other U.S. government agencies; to foreign government agencies; to State, local and tribal government agencies; to Non-governmental entities that are contractually supporting a Federal government agency's operations or research and development efforts; to USCG-validated port partners; to Non-governmental entities with which the U.S. has an established or formalized relationship; and to others. [10]

11. The NAIS program poses a significant threat to privacy. With NAIS, the Defendants "collect, integrate, and analyze" millions of data points from boaters every day for purposes unrelated to collision avoidance; retain that data for an indeterminate time; and assign boaters secret designations that may subject mariners to government scrutiny.

12. The Privacy Act of 1974 requires all federal agencies that maintain a system of records to publish the details of such record systems in the Federal Register.[11] The publication must describe the intended uses of the system, the policies and practices governing the records, and the procedures agencies must follow to give individuals access to their records.[12]

13. The E-Government Act of 2002 requires agencies to perform Privacy Impact Assessments ("PIA"). PIAs are required when "developing or procuring information technology

---

[7] *See* NAIS Overview.

[8] U.S. Coast Guard Acquisition Directorate, *Acquisition Update: Coast Guard Purchases Equipment To Complete NAIS Deployment*, (Jan. 30, 2015). http://www.uscg.mil/acquisition/newsroom/updates/nais013015.asp.

[9] U.S. Coast Guard, *Project Overview*, The Guardian: The Nationwide Automatic Identification System Newsletter 2 (June 2007), http://www.uscg.mil/acquisition/nais/documents/NAIS-Newsletter-Issue1-3QFY07.pdf.

[10] U.S. Coast Guard Navigation Ctr., *Levels of NAIS Real-Time and Historical Data*, http://www.navcen.uscg.gov/?pageName=NAISdisclaimerPop (last visited Sept. 18, 2015)

[11] 5 U.S.C. § 552a(e)(4).

[12] § 552(a)(e)(4)(A)–(I).

that collects, maintains, or disseminates information that is in an identifiable form" or "initiating a new collection of information" that contains identifiable information.[13] Additionally, the PIAs are required to be made public if practicable.[14]

14. The USCG and DHS have not published a Systems of Record Notice ("SORN"), as required by the Privacy Act of 1974, or Privacy Impact Assessments ("PIA"), required by the E-Government Act of 2002, regarding the NAIS.

15. The boating community is alarmed about the NAIS program. Ralph Naranjo, a widely regarded mariner, author, and former Vanderstar Chair at the U.S. Naval Academy, expressed dismay that "a sailor's Good Samaritan effort to share location data will automatically enroll them in a data bank that tracks all of their movements."[15] In comments to the USCG regarding the agency's dissemination of NAIS data, BoatU.S., "the nation's largest organization of recreational boaters," said that NAIS "raises questions as to who might wish to use [the] data and to what end," and urged the agency to "narrowly confine the use of [the] data for safety and homeland security purposes."[16]

16. Significantly, this system of data collection and analysis, implemented at the direction of the DHS, is contrary to the USCG's general support for the privacy of boaters and the protection of their personal information. Regarding a new USCG app for boaters, the Coast Guard itself has recently stated that it "does not track any personal information or your location. All of your

[13] E-Government Act of 2002, PL 107-347, Dec. 17, 2002, 116 Stat. 2899 § 208(b)(1)(A)(i)-(ii).
[14] *Id.* at § 208(b)(1)(B)(iii).
[15] Ralph Naranjo, *Big Brother on the Water: The Coast Guard's Maritime Domain Awareness Program Chips Away at our Boating Freedoms*, Practical Sailor, Feb. 2011, at 28, *available at* http://www.practical-sailor.com/issues/37_2/features/Is_AIS_Chipping_Away_at_Our_Freedoms_10135-1.html.
[16] BoatU.S., Comment Letter on Interim Policy for the Sharing of Information Collected by the Coast Guard Nationwide Automatic Identification System (Feb. 18, 2010), http://www.regulations.gov/contentStreamer?documentId=USCG-2009-0701-0009&attachmentNumber=1&disposition=attachment&contentType=pdf.

personal information is saved within the app itself and is only transmitted to the Coast Guard when you send it."[17]

**EPIC's FOIA Request**

17. On May 29, 2015, EPIC transmitted, via email and fax, a FOIA request to the USCG.

18. In the FOIA Request, EPIC sought the following agency records:

1) All technical specifications, progress reports, and statements of work associated with contract number HSCG2309CADP001 (a contract between the Department of Homeland Security/USCG and Northrop Grumman Space & Mission Systems Corp.);
2) All USCG policies and procedures for the collection, storage, analysis, use, retention, and deletion of data obtained through NAIS;
3) All policies and procedures concerning the sharing of Level A or Level B NAIS data with other agencies, governments, non-governmental entities, and individuals;
4) All records detailing the agencies, governments, non-governmental entities, and individuals with whom Level A or Level B NAIS data has been shared and how often it has been shared with them; and
5) All civil rights & civil liberties impact assessments of NAIS, whether prepared by the Office for Civil Rights and Civil Liberties or another unit.

19. EPIC also sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(4)(A)(ii).

---

[17] U.S. Coast Guard, *Coast Guard Mobile App for Boating Safety – Android*, YouTube (May 12, 2015)

20. EPIC also sought waiver of all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii), arguing that the requested documents would provide details about the scope of NAIS, a government surveillance program that should be subject to public scrutiny and discussion.

21. EPIC further requested expedited processing of the FOIA request.

22. EPIC received no response to its FOIA request from the USCG within the statutory deadline.

23. On July 7, 2015, having received no response from the agency, EPIC sent the USCG, via certified mail and fax, a letter appealing the agency's failure to make a timely determination of EPIC's FOIA Request ("Administrative Appeal"). In the Administrative Appeal, EPIC also renewed the request for expedited processing and made clear that the agency could not assess search or duplication fees because it failed to make a timely determination on the FOIA Request.

24. In a letter to EPIC dated August 4, 2015, the USCG acknowledged that EPIC's Administrative Appeal was received by the agency, but made no determination on the FOIA Request.

25. The USCG has not made any determination regarding EPIC's FOIA Request.

**EPIC's Constructive Exhaustion of Administrative Remedies**

26. It has been 79 business days since the USCG received EPIC's FOIA Request.

27. The USCG has failed to make a determination regarding the FOIA Request within the time period prescribed by 5 U.S.C. §§ 552(a)(6)(A)(i) and 552(a)(6)(E)(iii).

28. The USCG's failure to make a determination within the statutory limit violates the FOIA.

29. EPIC has constructively exhausted the administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

30. Plaintiff asserts and incorporates by reference paragraphs 1–29.

31. Defendant USCG failed to make a determination regarding EPIC's request for expedited processing within ten days, and has thus violated the deadline under 5 U.S.C. § 552(a)(6)(E)(ii)(II) and 49 C.F.R. § 7.31(c)(4).

32. Defendant USCG has failed to make a determination regarding EPIC's FOIA Request within twenty business days, and has thus violated the deadline under 5 U.S.C. § 552(a)(6)(A)(i) and 49 C.F.R. § 7.31.

33. Plaintiff has constructively exhausted the applicable administrative remedies with respect to EPIC's FOIA Request.

## Count II

### Violation of FOIA: Failure to Grant Expedited Processing

34. Plaintiff asserts and incorporates by reference paragraphs 1–29.

35. EPIC is an organizations primarily engaged in the dissemination of information; there is an urgency to inform the public about NAIS.

36. Defendant USCG has failed to grant the request for expedited processing of the FOIA Request to which EPIC is entitled under 5 U.S.C. § 552 (a)(6)(A)(ii) and (a)(6)(E)(iii), and 49 C.F.R. § 7.31(c).

## Count III

### Violation of FOIA: Unlawful Withholding of Agency Records

37. Plaintiff asserts and incorporates by reference paragraphs 1–29.

38. Defendant has wrongfully withheld agency records requested by Plaintiff.

39. Plaintiff has constructively exhausted applicable administrative remedies with respect to the defendant's withholding of the requested records.

40. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

**Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A. Order Defendants to conduct a reasonable search for all responsive records;

B. Order Defendants to disclose to Plaintiff, as soon as practicable, all responsive, non-exempt records;

C. Order Defendants to produce a *Vaughn* Index identifying any records or portions of records withheld, if such records exist, stating the statutory exemption claimed and explaining how disclosure would damage the interests protected by the claimed exemption;

D. Order Defendants to produce the records sought without the assessment of search fees;

E. Order Defendants to grant Plaintiff's request for a fee waiver;

F. Award Plaintiff costs and reasonable attorneys' fees incurred in this action; and

G. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President

Alan Butler, D.C. Bar # 1012128
EPIC Senior Counsel

By: */s/ T. John Tran*
T. John Tran, D.C. Bar # 1027767
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: September 18, 2015